# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| LISA AND JAMES MICHAEL RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:03-CV-530 |
| | ) | |
| THE TOWN OF SCHERERVILLE, | ) | |
| INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on January 14, 2005; and Schererville's Motion to Strike Plaintiffs' Appendix and Supporting Affidavits, filed by Defendant on February 25, 2005. For the reasons set forth below, the motion for summary judgment is **GRANTED IN PART and DENIED IN PART**; the motion to strike is **DENIED**. The motion is **GRANTED** as to Lisa Ryan's claim of Intentional Infliction of Emotional Distress, James Ryan's claim of retaliation, and Lisa Ryan's claims of sex discrimination through disparate treatment, with the exception of the portion of the claim regarding Defendant's failure to train her. The Clerk is **ORDERED** to **DISMISS** these claims with prejudice. The motion is **DENIED** in all other respects. This case **REMAINS PENDING** as to Lisa Ryan's hostile work

environment claim, claim of retaliation, and claim of sex discrimination (failure to train only). The Clerk is **ORDERED** to **CLOSE** this case with respect to Plaintiff **JAMES RYAN ONLY.**


BACKGROUND

Plaintiff, Lisa Jean Ryan ("Lisa Ryan"), had been employed by Defendant, Town of Schererville (the "Town"), since December, 1993. In 1995,[1] Lisa Ryan was transferred from the Sewer Department to the Department of Public Works' Street[2] Department. Lisa Ryan was the only female employee who worked outside of the office pursuant to her regular work assignment.[3] Lisa Ryan was subsequently promoted on at least two occasions, and held the position of "maintenance worker 1" when her employment was terminated.[4] Lisa Ryan met and married her husband, James Ryan ("James Ryan"), at the Street Department, where the two of them worked together. Lisa Ryan alleges that she was subjected to a hostile work environment

---

[1] Defendant states that Lisa Ryan was transferred in 1995; however, in her deposition, Lisa Ryan claims to have been transferred in January 1996. (Lisa Ryan Dep., p. 53; Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 1 ("Memo in Support").) This discrepancy is not material, but must be acknowledged.

[2] The parties are not consistent in their name of the department, rotating between "Street Department" and "Streets Department." The Court chooses to use "Street Department" for purposes of this Order, although the parties do not indicate which is actually correct.

[3] Occasionally, the two other female employees would work in the field if it was absolutely necessary.

[4] Lisa Ryan's termination is not at issue in this case. As her claim for retaliatory discharge is currently not before this Court, but rather the Equal Employment Opportunity Commission ("EEOC"), it will not be addressed further in this Order.

while she worked at the Street Department.  Lisa Ryan alleges that after she filed a charge with the EEOC, she was retaliated against in numerous ways.  In addition to Lisa Ryan's claim of retaliation, James Ryan claims that he was subjected to retaliation for supporting his wife through the process.  In addition to the alleged violations of Title VII[5] through sexual discrimination, hostile work environment, and retaliation, Lisa Ryan also alleges a state law claim of intentional infliction of emotional distress. Defendant has now moved for summary judgment on all claims.  The issues have been fully briefed, and are ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

---

[5] 42 U.S.C. § 2000, *et seq.*

250 (1986).   In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.   Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"   *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of

material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.


Motion to Strike

It is unfortunate that the resolution of the summary judgment motion was made significantly more difficult and time consuming due to Plaintiffs' attorney's complete disregard of summary judgment procedure.  In response to the instant summary judgment motion, Plaintiffs submit an "Appendix - Plaintiffs' Statement of Genuine Issues of Material Fact," along with supporting affidavits.  The affidavits were prepared *after* the close of discovery, and *after* the instant motion for summary judgment was filed.  For the most part, Plaintiffs then simply cite to these affidavits, instead of the various materials prepared during the discovery process.

The submitting of these after-prepared affidavits, instead of what should have been submitted, undermines the discovery process, undermines the principle of full disclosure, and undermines the resolution of the summary judgment motion on the merits. The attorney is advised that such underhanded tactics will not be tolerated in the future. While the Court considered imposing sanctions (in an amount equal to Defendant's fees to bring and argue the motion to strike), the Court elected not to do so. However, the attorney is advised sanctions may be imposed, should he elect to not play by the rules in the future in other cases.

As for the motion to strike, it is **DENIED**. First, the Court did not consider the Appendix in making its decision on the summary judgment motion. The Court could not even use the Appendix, as it cites completely to the affidavits, and not the actual deposition testimony.

Second, the Court did not rely on the affidavits in making its decision. Even though the Court was not required to, the Court sifted through the record submitted by Defendant (and other evidence submitting by Plaintiffs), reviewing Plaintiffs' deposition testimony. In general, the affidavits are summaries and highlights of the information contained in the deposition testimony. As it turns out, the Court was able to find the facts relied on in this order in the actual deposition and other

testimony.   It is unfortunate the Court had to perform the work of Plaintiffs' attorney.   However, in the interests of justice and fairness, the Court felt it appropriate to scour the record to find the facts that support Plaintiffs' representations.   As detailed below, the Court was able to locate facts in the record that are indeed disputes of material facts with respect to some of Plaintiffs' claims.   In sum, the Court did not rely on any facts that could not be found elsewhere in either the Defendant or Plaintiffs' materials.

<u>Whether Defendant Is Entitled to Summary Judgment</u>
<u>With Regard to Plaintiffs' Title VII Claims</u>

     <u>Factual Allegations Prior to the 300 Days Before</u>
     <u>Lisa Ryan Filed Her Charge of Discrimination May Be</u>
     <u>Considered With Regard to Her Hostile Work Environment Claim</u>

The first issue is whether the Court may consider factual allegations regarding Defendant's alleged misconduct, which fall outside of the 180 or 300-day limitations included within Title VII.   The Court concludes that it may.   This conclusion is based upon *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).   Defendant alleges that "Lisa Ryan may not litigate allegations of a hostile work environment claim which took place more than 180 days[6] prior to the filing of her charges of

---

[6] In Defendant's Reply to Plaintiff's Response ("Reply"), Defendant corrects the number of days to 300. (Reply, p. 2).

discrimination."   (Memo in Support, p. 7.)   In support of this, Defendant cites *Morgan*, 536 U.S. at 104-05.   Defendant claims "[t]he Supreme Court has held that a plaintiff may not rely on the continuing violations when allegations of discrete acts fall outside of the limitations period."   (Memo in Support, p. 7 (citing *Morgan*, 536 U.S. at 114-15).)   Moreover, "[a]cts which are so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain or single course of conduct to defeat the statute of limitations." (Memo in Support, p. 7 (citing *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002)).

Defendant correctly argues that the continuing violation doctrine is not a viable option for Plaintiff to avoid issues regarding the statute of limitations with regard to discrete acts of discrimination.   However, Plaintiff has not attempted to use the continuing violation doctrine, nor has Plaintiff alleged discrete acts of discrimination outside of the statute of limitations. Rather, Plaintiff alleges a hostile work environment made up of many predicate bad, although not necessarily individually actionable, acts on the part of Defendant and Defendant's agents.

Under *Morgan*, discrete acts of discrimination occur when they happen.   *Morgan*, 536 U.S. at 110 (stating "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").

-8-

Thus, the *Morgan* Court held that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105.  However, Defendant ignores the sentence of the Court's opinion that directly follows the sentence Defendant so heavily relies upon in asserting that "Lisa Ryan may not litigate allegations of a hostile work environment claim which took place more than 180 days[7] prior to the filing of her charges of discrimination."  (Memo in Support, p. 7.) In deciding the issue Defendant argues in the negative, the Court stated, "[w]e also hold that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  *Id*.

Given Defendant's misunderstanding of *Morgan* and the Court's holding, this Court deems it necessary to clarify the principles set forth therein and more fully apply these principles to the instant case.[8]  In *Morgan*, Morgan filed a claim with the EEOC and

---

[7] *See supra* note 5 (actual limitations period is 300 days).

[8] In addition to using spurious argumentation in its Memo in Support, Defendant's Reply shows a clear misunderstanding for the principles of *Morgan*.  Defendant states that "Lisa Ryan may not litigate allegations of a hostile work environment claim which took place more than 300 days prior to the filing of her February 3, 2003 charge of discrimination.  In her Response, Lisa Ryan contends that all 'harassment' allegations are part of one alleged unlawful employment practice."  (Reply, p. 2.)  Although imprecisely worded in Plaintiffs' Response due to the double use of the term "harassment," Lisa Ryan's claim (that Defendant seemingly scoffs), is entirely correct.  The predicate bad acts which make up a claim for hostile work environment do make up one unlawful employment practice, namely a hostile work environment.

received his right to sue letter. In his charge, Morgan, an African-American, alleged that he had been disciplined more harshly than his white counterparts, that he had been harassed, and subjected to a hostile work environment both in the 300 days that preceded the filing and in the time prior to the 300 days before filing with the EEOC. The district court granted summary judgment for the defendant on the grounds that it was not unreasonable to expect the plaintiff to bring suit earlier, given the fact that he knew of the harassing acts prior to the 300 days before filing the charge with the EEOC. The Ninth Circuit reversed, citing the continuing violation doctrine, stating that so long as the discrimination is not isolated, sporadic or discrete, the claim was not time barred.

The Supreme Court reversed the decision of the Ninth Circuit in part and affirmed it in part. *Morgan*, 536 U.S. at 104-05. The Court stated that the statute clearly requires that any charge be filed within the specified period of time[9] after an alleged unlawful employment practice. *Id*. at 109. Unlawful employment practices occur on the day that they happen. *Id*. at 110. Since discrete discriminatory acts are individually unlawful employment practices, when they fall outside of the statutory period of

---

[9] This period is 300 days if the plaintiff lives in a "deferral state" such as California and Indiana, and 180 days if the plaintiff does not live in such a state. 42 U.S.C. § 2000e-5(a).

limitations, such acts are time barred and cannot be considered by a court. *Id*. The Court stated that since there is a clear statutory definition of what qualifies as an unlawful employment practice, and that the statute never refers in any way to related discrete acts as making up an individual unlawful employment practice, the continuing violation doctrine is not supported by the statute. *Id*. at 111; *see* 42 U.S.C. § 2000e-2(a) (stating "[i]t shall be an unlawful employment practice for an employer — (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .").

Hostile work environment claims must be treated differently. *Morgan*, 536 U.S. at 115 (stating "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."). Not only does a hostile work environment inherently involve "repeated conduct," but also hostile work environment is *an* unlawful employment practice that "cannot be said to occur on any particular day." *Id*. A hostile work environment occurs over time, sometimes even years. *Id*. Generally, the discrete acts which compose a hostile work environment are not individually actionable. *Id*. (citing *Harris v. Forklift Sys.,*

-11-

*Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)).  Thus, it can be said that a hostile work environment is really the cumulative effect of many small acts, which standing alone are not actionable under Title VII.  *Id.*

A plaintiff, according to the Court, is required to file within 180 or 300 days "[a]fter the alleged unlawful employment practice occurred." *Id.* at 117.  A hostile work environment is *one* unlawful employment practice.  *Id.* (emphasis added).  The fact that some of the "component acts" fall outside the 300 days is of no consequence to the determination of whether the component act, falling outside of the relevant period, should be considered.  *Id.* Therefore, the Court concluded, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

In the instant case, Lisa Ryan makes no claim as to a continuing violation; therefore, Defendant's argument based upon continuing violation is specious and unavailing.  Defendant's claim that Lisa Ryan is unable to use component acts that occurred prior to the 300 days prior to filing her EEOC because the component acts do not create a continuing violation of the type contemplated prior to *Morgan* (and for that matter, in *Tinner*), is true.  However, a

-12-

hostile work environment is not a continuing violation; it is a single violation which happens so long as the cumulative effect of the component parts create such an environment. So Lisa Ryan does not need to even address the continuing violation doctrine, as it is never implicated with regard to an alleged hostile work environment. Defendant correctly states "[t]he 'continuing violation' doctrine has no application here," and thus should not have even brought it into the argument.

Additionally, Defendant's reliance on *Tinner* is wholly misplaced. *Tinner* was decided by the Seventh Circuit Court of Appeals after *Morgan*, and thus must be addressed, as it is controlling precedent upon this Court. The *Tinner* court did not address the hostile work environment claim brought by Tinner, instead focusing upon three discrete acts which Tinner claimed were acts of discrimination. Each of these acts occurred outside of the 300 days prior to the EEOC charge. The Seventh Circuit held that these three discrete acts were time barred under *Morgan* since the continuing violation doctrine was no longer viable. *Tinner*, 308 F.3d at 708. The court continued, stating that even if the continuing violation doctrine remained viable after *Morgan*, and the Seventh Circuit by no means held that the doctrine did remain viable, Tinner would nonetheless not be allowed to use the doctrine to slide such acts in through the back door. *Id*. at 708-09. The

-13-

Seventh Circuit never addressed the hostile work environment claim, nor did it address *Morgan* insofar as the Supreme Court distinguished discrete acts and a hostile work environment.  *Id.*

*Tinner* does not address the operative issue that Defendant raises.  Rather, Lisa Ryan's claims are squarely within the auspices of *Morgan*.  With regard to the hostile work environment claim brought by Lisa Ryan, the Court holds that since many of the component acts alleged to have caused the hostile work environment, such as the directed bad language, occurred within the 300 days prior to Lisa Ryan's filing of a charge with the EEOC, all component acts will be considered by the Court in determining whether Defendant is entitled to summary judgment.  Thus, since the Supreme Court acknowledged that a hostile work environment is *one* unlawful employment practice, that this one practice may occur over the course of years, and that a court may look to all component acts without regard to the 300 day statute of limitations, all allegations used by Plaintiff to argue that a hostile work environment existed will be used when determining the central issues of Defendant's motion.

Insofar as Lisa Ryan may argue that any of these component acts constitute an individual discrete act of discrimination, and fall outside of the 300 day limit, such acts will be disregarded, except for their effect on the hostile work environment.  As Lisa

-14-

Ryan does not rely on such acts for her charge of sex discrimination, this statement may be rendered nugatory. However, it is important to note that discrete acts of alleged discrimination should not be dressed up as component acts of a hostile work environment so as to avoid the statute of limitations problem. Therefore, if an alleged component act would be actionable, if true, on its own, the Court disregards such an act as to the hostile work environment claim. Individual acts of bad language, and non-directed displays of pornography, are not discrimination and therefore can be considered with regard to a hostile work environment.

The occurrences Lisa Ryan alleges to be acts of sex discrimination are supervisory use of discretion in a discriminatory manner, failure to take corrective action, failure to provide a women's restroom near her workstation, and not providing equal pay for equal work. (Am. Compl. ¶¶8-16.) None of these acts allegedly occurred outside of the 300 day period, and insofar as any of the acts did occur outside of that time period, they will not be considered. None of these acts are used in support of the hostile work environment claim either; additionally, noticeably missing from this list are the alleged component parts of the hostile work environment claim, save the failure to correct, which was alleged for purposes of stopping an affirmative defense

available to Defendant, not necessarily in support of such a claim. (Am. Compl. ¶¶ 17-22.) Since the allegations supporting the hostile work environment claim are not individually actionable, they may be used in support of the claim without regard to their timing, as they allegedly happened regularly, including days after the beginning of the 300 day period.

> <u>Defendant Is Not Entitled to Summary Judgment</u>
> <u>With Regard to Lisa Ryan's Hostile Work Environment Claim</u>

The second issue which the Court must address is whether Defendant is entitled to summary judgment with regard to Lisa Ryan's claim that she was subjected to a hostile work environment throughout her employment with Defendant. The Court concludes Defendant is not so entitled. In drawing this conclusion, the Court notes that significant issues of fact remain with regard to whether the working environment was hostile and with regard to whether Defendant has met its burden as to its affirmative defense. Each of these two reasons for the Court's determination is addressed in turn.

A cause of action for "hostile work environment" was first recognized by the Supreme Court in *Meritor Savings Bank v. Vinson*. 477 U.S. 57, 66 (1986) (stating "[s]ince the Guidelines were issued, courts have uniformly held, and we agree, that a plaintiff may establish a violation of Title VII by proving that

discrimination based on sex has created a hostile or abusive work environment."). The Court stated that in order to be actionable, the harassing conduct must be so severe or pervasive as to affect a term or privilege of the alleged victim's employment. *Id*. at 67; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (requiring that the harassment be so severe or pervasive that the terms or conditions of employment are affected).

The Seventh Circuit Court of Appeals has stated that actionable sexual harassment in the form of a hostile work environment is actionable if the plaintiff can show that he or she was subjected to unwelcome sexual harassment; the harassment was based upon sex; the harassment unreasonably interfered with work performance by creating an intimidating, hostile, or offensive working environment that seriously affected the alleged victim's psychological well-being; and that there is a basis for employer liability. *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004) (citing *Robinson v. Sappington*, 351 F.3d 371, 328-29 (7th Cir. 2003)). The conduct creating a hostile work environment must be so severe or pervasive as to alter the terms and conditions of employment and create an abusive work environment. *Id*. at 438 (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002)). The actions must create a "hellish" environment, meaning one in which it is clear that a

-17-

female does not belong or is not wanted. *See McKenzie v. Milwaukee County*, 381 F.3d 619, 624-25 (7th Cir. 2004) (observing that men and women were treated in the same derogatory manner; thus women were no less welcome than men that the supervisor did not like); *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996)*, abrogated* as to continuing violations *by Morgan*, 536 U.S. 101 (stating "there is no evidence [] that women do not belong in the work force or are not entitled to equal treatment with male employees. In these circumstances no inference could be drawn by a reasonable trier of fact that Bullock's behavior, undignified and unfriendly as it was, created a working environment in which Galloway could rationally consider herself at a disadvantage in relation to her male coworkers by virtue of being a woman.").

The environment must be both subjectively and objectively hostile. *McKenzie*, 381 F.3d at 624; *McPherson*, 379 F.3d at 438 (citing *Hilt-Dyson*, 282 F.3d at 462-63). In order to determine whether the environment was objectively hostile, the Court looks to the frequency and severity of the conduct, whether the conduct was threatening or humiliating as opposed to merely "an offensive utterance," and whether the harassment unreasonably interfered with the plaintiff's work. *McPherson*, 379 F.3d at 437-38 (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir.

-18-

2004)).  The difficulty is drawing the line between merely some offensive activity and an objectively hostile environment.  *Id*. "On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, or coarse or boorish workers . . . . It is not a bright line, obviously, this line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other." *Id*. (citing *Bakersville v. Culligan Int'l. Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995)).

In *McPherson*, the Seventh Circuit determined that the environment was not objectively hostile when a supervisor occasionally behaves in a boorish manner, and even occasionally touches a female employee.  *Id*. at 439.  The Court cited much precedent for the proposition that actions, which, although vulgar or boorish, are spread out over time and are few and far between, are neither severe nor pervasive to the extent necessary to show that an objectively hostile work environment existed.  *Id*. (citing *Hilt-Dyson*, 282 F.3d at 463-64; *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998)).  When determining whether

the alleged acts create a hostile work environment, the Court must view secondhand information as having a lesser impact than direct, firsthand acts experienced by the plaintiff.  *McKenzie*, 381 F.3d at 624.

Defendant asserts that the only timely claims that could lead to a hostile work environment are Lisa Ryan receiving information that she had been called a "fucking bitch" in January, 2003 outside of her presence; Chip Bell searching the Plaintiffs' car (Bell also searched the car of another employee at that time); and the fact that there was pornography present in the break area during the winter of 2002-03.  As was discussed above (*see supra*), because at least one alleged act in the creation of a hostile work environment took place during the 300 days prior to Lisa Ryan's EEOC filing, all acts will be considered when determining whether a reasonable trier of fact could find that Lisa Ryan was subjected to a hostile work environment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (holding "[a] charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

Lisa Ryan claims that she was called a "fucking bitch" and a "fucking cunt" as well as "lesbian," "dyke," "pussy-licker," and

"carpet muncher" on an almost daily basis.   (*See, e.g.,* Lisa Ryan Dep., p. 90 (explaining how Lisa Ryan reported sexual harassment to her supervisors "every day or every other day . . . .").)   Lisa Ryan also alleges that she was subjected to a rumor near the beginning of her employment with the Street Department, that she was giving "blow jobs" to the men on the night shift.   She further alleges that pornography was prominently displayed and openly viewed in her presence.   Moreover, she was subjected to questioning regarding the pornography, and the pornographic pictures were deliberately shown to her.   Lisa Ryan claims that she was mocked monthly due to her menstrual cycle; the men, including supervisors, allegedly used many derogatory terms about her cycle and her.   At one point, someone left a dildo on the time clock where Lisa Ryan was required to punch in for work.   Additionally, she alleges that her car was searched for a flashlight which was missing.

Defendant compares Lisa Ryan's allegations in the instant case to cases in which the allegations were simple vulgarities. However, if Lisa Ryan's allegations are in fact true, this case is clearly distinguishable from any case of mere vulgarity.   Defendant first cites *Bakersville v. Culligan Int'l. Co.*, 50 F.3d 428 (7th Cir. 1995) for the proposition that "a supervisor making nine sexually derogatory comments over a seven month period is not sufficient to constitute a Title VII violation."   (Reply, p. 4.)

-21-

In *Bakersville*, the following nine alleged acts were assumed to have taken place.  First, a supervisor for the defendant, Culligan, stated "there's always a pretty girl giving me something to sign off on" when talking to the plaintiff in that case; second, the supervisor grunted in a suggestive manner at a skirt the plaintiff was wearing; third, the plaintiff commented on the supervisor's office being hot, to which he replied "not until you stepped your foot in here;" fourth, the supervisor told the plaintiff that "may I have your attention please" meant "all pretty girls run around naked;" fifth, the supervisor called the plaintiff a "tilly;" sixth, the supervisor stated that he needed to clean up his act and that he had better think of the plaintiff as "Anita Hill;" seventh, he told the plaintiff at the Christmas party that he needed to leave because there were so many pretty girls that he thought that he would lose control; eighth, she complained that the office was smoky from cigarettes and he responded by asking if she meant like we're dancing at a night club?; ninth, he suggested masturbation by a hand gesture after telling her that he was lonely at his hotel room.  *Id*. at 430.  The Seventh Circuit determined that this was not enough to constitute a claim for hostile work environment.  *Id*. at 431 (holding that no reasonable jury could find that the supervisor was a sexual harasser).

Defendant claims that the acts of the Town's employees and supervisors cannot be distinguished from those of the supervisor in *Bakersville*. (Reply, p. 4.) This is not true. The reality is that if Lisa Ryan's allegations are true, they are easily distinguishable. First, whereas the acts in *Bakersville* were not threatening, the behavior Lisa Ryan was allegedly subjected to is clearly threatening and thus falls further to the side of hostile work environment than did the acts in *Bakersville*. *See McPherson*, 379 F.3d at 437-38 (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir. 2004) (noting that in order to determine whether the environment was objectively hostile the Court looks to the frequency and severity of the conduct, whether the conduct was threatening or humiliating as opposed to merely "an offensive utterance," and whether the harassment unreasonably interfered with the plaintiff's work)).

Although there have been cases which state that the use of the word "bitch" is not necessarily gendered and thus not always harassing, when a women is being called names such as F__ B__ *and* F__ C__, as well as numerous other derogatory terms relating to her sexuality and her menstrual cycle, a reasonable trier of fact could find that there was an objectively hostile and threatening work environment. *See Galloway*, 78 F.3d at 1168 (stating "[t]he terms 'fucking broads' and 'fucking cunts' are more gendered than

-23-

'bitch'; and there was much else in the case to establish the
sexual character of the harassment. We do not suggest, moreover,
that the word 'bitch' can *never* figure in a sex discrimination
case. When a word is ambiguous, context is everything.  The word
'bitch' is sometimes used as a label for women who possess such
'woman faults' as 'ill-temper, selfishness, malice, cruelty, and
spite,' and latterly as a label for women considered by some men to
be too aggressive or careerist.") (internal citation omitted)
(emphasis in original).  Thus, here the threatening nature of the
use of such terms, the almost daily use of such terms to refer to
Lisa Ryan, and the clarity with which such terms are used in regard
to females make this case clearly distinguishable from *Bakersville*.

Defendant next argues that if there are no allegations beyond
boorish behavior and vulgar language, the Court should grant
summary judgment.  (Reply, pp. 4-5.)  To this end Defendant cites
*Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th
Cir. 1993).  The *Weiss* court held that when a supervisor repeatedly
asked about the plaintiff's personal life, told her how beautiful
she was, asked her to join him for a couple of dates, called her a
dumb blonde, touched her shoulder six times, placed "I love you"
signs on her work station, and tried to kiss her on one occasion at
a bar and twice at work (although this was contradicted by the

plaintiff's deposition), there was not enough evidence of a hostile work environment. *Id*.

Yet again, the cases are clearly distinguishable.  Whereas in *Weiss*, the actions were not carried out everyday, in the instant case the alleged harassment took place nearly on a daily basis.  If there was any threat to Weiss, it was not remotely as severe as the alleged threat to Lisa Ryan.  As was stated above, Lisa Ryan dealt daily with insults, and sexually derogatory name calling.  Lisa Ryan was also reduced to tears on a monthly basis because she was screamed at by Jeff Huet.  Moreover, the allegations in the present case indicate that women were not welcome, aside from office and secretarial work, in the Street Department.  Weiss' allegations did not show that women were unwelcome or that women were not deserving of equal treatment in the workplace.  Lisa Ryan was allegedly subjected to treatment that goes quite a way beyond the point where the "only issue before the court involves boorish behavior and/or vulgar language."  (Reply, p. 4.)  The cumulative effect upon Lisa Ryan, and upon a reasonable person, in the instance that the allegations are true (which the Court does not pass upon here), are much different than being subjected to questioning about one's personal life, asked to go on dates, being complimented on looks, etc.  Terms such as "fucking cunt" and "fucking bitch" as well as derogatory means of indicating that Lisa Ryan was a lesbian,

-25-

although married to a male co-worker, when coupled with the pornography, the dildo on the time clock, and general mistreatment due to her being female, are not simple vulgar language and boorish behavior claims. These type of allegations likely fall within the first side of the dichotomy set forth by the Seventh Circuit in *McPherson*. *McPherson*, 379 F.3d at 437-38 (citing *Bakersville v. Culligan Int'l. Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (stating "[o]n one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers . . . . It is not a bright line, obviously, this line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other.")).

Finally, Defendant claims that the behavior in the present case, and Lisa Ryan's inability to remember specific dates of certain harassment, indicates that summary judgment is proper. (Reply, pp. 5-6.) Defendant claims that Lisa Ryan's claims are "fatally indistinguishable" from the claims of the plaintiff[10] in

---

[10] The *Wieland* plaintiff finalized a divorce between the filing of the case and the decision, at which point she changed her name back to her maiden name, Garza. She will be referred to as "plaintiff" for simplicity's sake.

*Wieland v. Department of Transportation, State of Indiana*, 98 F. Supp. 2d 1010 (N.D. Ind. 2000).  In *Weiland*, the court determined that there was no violation of Title VII because the harassment was not "but for" her sex, and her deposition was "full of 'I don't remember'" and similar statements.  *Id*. at 1019.  The supervisor in *Wieland* treated everyone equally as badly.  He did not make sexual comments, or refer to the plaintiff in a sexual manner.  He did cuss a lot, as did the rest of the employees, including the plaintiff.  The plaintiff did not remember any specific comments at all, with one exception.  The only remotely sexual comment made by the supervisor was that "women could 'bitch and complain about your pussy hurting' and get off the job." *Id*.

In fact, *Wieland* is almost exactly as Defendant describes it. "[the *Wieland*] plaintiff's deposition was full of 'I don't remembers'; (sic) the alleged sexual harassment mainly consisted of 'bad language'; (sic) plaintiff admitted that she swore and that most employees used cuss words; that the plaintiff was never touched; their supervisor ever (sic) asked for sexual favors or tried to date her, never made sexual comments directed to her like 'nice T and A'; (sic) never referred to her sexually; acknowledged that the main alleged harasser used cuss words when he talked to everyone regardless of gender; an old pinup was on an employee's locker; that the plaintiff herself brought in a risqué magazine and

showed it to coworkers; admitted that she never complained about 'pornography'; and did not receive a timely bathroom break when she was having her menstrual cycle.  Further, the court found that the plaintiff could not demonstrate that any of the activities occurred based on her gender." (Reply, p. 5 (citing *Weiland*, 98 F. Supp. 2d at 1019-20).)

The bad language in *Wieland* was described by the court as "cussing," and there was no indication that any cuss words other than generic non-gender oriented words were used.  In fact, the plaintiff herself did not indicate that the "bad language" was sexual in nature.  *Id*. at 1019.  In the present case, the bad language was clearly sexual in nature, particularly when looked at in context.  It is not possible to separate the term "fucking cunt" from its derogatory connotations regarding women and women's sexual organs.  Moreover, the derogatory terms used to describe Lisa Ryan as a lesbian are clearly gender based because none would be used to describe a man.  *See Galloway*, 78 F.3d at 1168 (stating "[t]he terms 'fucking broads' and 'fucking cunts' are more gendered than 'bitch'; and there was much else in the case to establish the sexual character of the harassment. We do not suggest, moreover, that the word 'bitch' can *never* figure in a sex discrimination case. When a word is ambiguous, context is everything. The word 'bitch' is sometimes used as a label for women who possess such

'woman faults' as 'ill-temper, selfishness, malice, cruelty, and spite,' and latterly as a label for women considered by some men to be too aggressive or careerist.") (internal citation omitted) (emphasis in original).

Arguably, the allegation that Jeff Heut reduced Lisa Ryan to tears on a monthly basis is not directly attributable to her being female.  If this is the case, then this allegation must be discounted with regard to whether a hostile work environment existed because if it was not motivated by Lisa Ryan's sex, then it cannot be discrimination based upon sex. *See Wieland*, 98 F. Supp. 2d at 1017 (stating "[t]he key inquiry in these cases is whether the alleged acts of harassment occurred 'but for' the employee's sex.").  Plaintiff's brief seems to imply that Lisa Ryan's reduction to tears resulted from being ridiculed for her menstrual cycle; however, this is not directly said.  (Pls.' Resp., p. 4.) Even if this allegation is not considered, the situation is still clearly distinguishable from the situation in *Wieland*.

Lisa Ryan does not remember specific dates.  This simple fact does not make the instant case the same as that in *Wieland*.  It is true that the plaintiff in *Wieland* did not remember specific dates of alleged occurrences; she also did not remember specific comments or instances of harassment.  Instead, the *Wieland* plaintiff stated that "[i]t just wasn't right."  The importance of this is not as

much that she did not remember dates or other specifics and therefore had no claim; rather, she could not remember enough specific instances to show that the harassment that she subjectively felt was objectively harassing and caused by her sex. *Wieland*, 98 F. Supp. 2d at 1019.  In the present case, Lisa Ryan remembers many specific instances, and never claims that it just did not feel right, or that she simply subjectively felt harassed. The fact that she does not remember specific dates of each occurrence says nothing about whether she stated a claim.  There is significant evidence (from Lisa Ryan herself and witnesses) that the statements she claims to have been made about her actually were made about her, both in front of her and behind her back.

The fact that Lisa Ryan used cuss words too is not the same as the statement in *Wieland* that the plaintiff used cuss words just like her co-workers.  Lisa Ryan did not refer to her co-workers (or she has not been alleged to have) as "fucking cunts," "fucking bitches," "pussy lickers," "carpet munchers," or other derogatory terms to which she was allegedly subjected.  Moreover, the fact that the supervisors who controlled her job assignments did not subject her to such ridicule is a red herring.  Defendant never claims that supervisors were not among those who did make the sexually derogatory comments; rather, Defendant argues that two of its many supervisors never made such comments.  Defendant argues

that Lisa Ryan never complained about the pornography in the office, and brought in suggestive cards for co-workers. Her lack of complaint has no place in this portion of Defendant's argument, as it should be addressed in Defendant's affirmative defense. The fact that she brought in cards with enlarged penises on them should not be compared so quickly to magazines and posters depicting men and women, or women and women, performing sex acts upon each other. A spoof or joking card, although possibly in bad taste, is a matter to be settled between the giver and receiver of that particular card. Being involuntarily subjected to perpetual viewing of pornography in the breakroom at work is simply not the same as the occasional card containing humor in bad taste.

This case is most similar to *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498 (7th Cir. 2004), in which the employer, on similar facts, admitted that a hostile work environment existed. Although the facts were similar, the treatment Lisa Ryan allegedly endured was worse than that endured by Rhodes. Rhodes worked for the Illinois Department of Transportation ("IDOT") as a seasonal, but full-time, worker. She worked in the area of snow removal. After two years of service, IDOT received a complaint from one of the citizens on Rhodes' route that the service was slow and not up to par. IDOT responded by assigning Rhodes to a shorter route the next year when she

returned.   Rhodes objected, but was unsuccessful.   Conditions deteriorated after that.   She was called a "bitch" and a "cunt," was forced to wash her truck in sub-zero temperatures, assigned to work in the yard for several days, was not allowed to drive the foreman's truck when filling potholes, pornography was prevalent (both videos and magazines), and once was taped to her locker. Additionally, there was some sort of a rumor about her and one of her superiors having "something going on."   She was also marked absent on what turned out to be her last day of work even though she had called and informed someone with some authority (the incorrect person to call) to inform him that she would be gone. IDOT conceded that this was enough to create a hostile environment.

Rhodes was called sexually vulgar names for a significantly shorter period of time than Lisa Ryan.   Lisa Ryan was subjected to such treatment for the duration of her employment, whereas Rhodes was only subjected to such treatment during one of her three years of service.   Since longer exposure to being disrespected can arguably cause greater harm, Lisa Ryan's treatment was significantly more pervasive, and severe.   Similarly, there is a difference between the present case and the pornography in *Rhodes*. In *Rhodes*, the IDOT employees who viewed the pornography used lookouts and warned each other of women and bosses in the area, whereas Lisa Ryan was directly exposed to the pornography.   Lisa

-32-

Ryan was asked whether she looked like this woman, or wanted to look like that woman.  Additionally, the men allegedly continued to view pornographic material, regardless of whether Lisa Ryan was in the area and allegedly made no efforts to prevent Lisa Ryan from finding such material.  Again, the treatment of Lisa Ryan was more severe than that of Rhodes.  Yet IDOT simply conceded that a hostile work environment existed.

For the above reasons, this Court holds that there remains a genuine issue of material fact with regard to whether the actions of the Town and the supervisors within the Street Department created a hostile work environment which was severe or pervasive, and both objectively and subjectively hostile.  The Town may be entitled to an affirmative defense as discussed in *Burlington Industries, Inc.  v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  It is to this which the Court now turns.

       <u>Defendant Is Not Entitled to Summary Judgment on</u>
       <u>Plaintiff's Hostile Work Environment Claim Due to</u>
       <u>Its *Faragher/Ellerth* Affirmative Defense</u>

When a supervisor creates a hostile work environment, and there is no tangible employment action (such as firing the employee), the employer may avoid liability, if the employer/defendant can show that it took reasonable care to prevent

-33-

or correct the harassing behavior *and* that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities. *Faragher*, 524 U.S. at 807-08; *Ellerth*, 524 U.S. at 765.  Defendant states that for the purposes of this defense, Lisa Ryan's claim that she reported the harassment to the appropriate authorities cannot be enough for her to survive summary judgment.  (Memo in Support, p. 13 (citing *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (2004)).)  Thus, there must be more, in Defendant's estimation, than Lisa Ryan's assertions that she reported the harassment to the proper authorities in order for the Court to deny the instant motion.

The persons committing the acts yielding a hostile work environment must be the alleged victim's supervisors for purposes of Title VII liability.  *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004).  Otherwise, the alleged victim must show that the employer was negligent in discovering or remedying the violation.  *Id*.  To show negligence, the employer must have had actual notice unless the violations were apparent to the point that the employer should have known of the harassing behavior.  *Id*. Lisa Ryan alleges that Chip Bell, Jeff Huet, Al Lewandowski, and Gene Poston each participated in the acts which created a hostile work environment.

Whether someone constitutes a supervisor for the purposes of Title VII depends upon the amount of control he or she wields over the alleged victim.  For example, in *Hall v. Bodine Electric Co.*, 276 F.3d 345 (7th Cir. 2002), the Seventh Circuit determined that an individual with authority to direct the day-to-day work operations of a subordinate, who had input on the subordinate's job evaluations, and worked as a trainer, was not a supervisor for Title VII purposes.  A supervisor will generally possess the power to hire, fire, demote, promote, discipline, and transfer an employee.  *Id.* at 355.  In the instant case, Volkman stated that the town manager, the foreman, and the assistant have the authority to discipline employees.  (Volkman Dep., p. 29.)  Thus, at least Gene Poston (the assistant director of public works), Chip Bell (the maintenance foreman), and Al Lewandowski (the equipment foreman), are arguably supervisors.  These individuals could "directly affect the terms and conditions of the plaintiff's employment."  *Rhodes*, 359 F.3d at 506.

The *Faragher/Ellerth* defense is available to claims involving a hostile work environment, and therefore Defendant *might* be able to take advantage of it in this case.  Defendant has a policy regarding sexual harassment, and Lisa Ryan knew about the policy. It is located in the "Town of Schererville Personnel Policy Manual," which has been attached to Defendant's motion for summary

-35-

judgment as "Exhibit H."  The policy states that Defendant unequivocally will not tolerate sexual harassment, that disciplinary action will result from any sexual harassment that may go on, and "[a]ny employee experiencing an alleged violation of this policy, who would prefer to discuss the circumstances away from his or her particular work area, shall meet with their department head *or* the Town Administrator, *or* a member of the Town Council." (Def.'s Ex. H, p. 8 (emphasis added).)

Defendant first misconstrues its own sexual harassment policy. The policy clearly uses the disjunctive "or" when stating to whom an individual with a complaint must address the complaint. (*Id.*) Surprisingly, Defendant claims that the complaint should be addressed to the "town manager and town council."  *Id*.  The fact that Lisa Ryan never approached the town council has nothing to do with whether or not she reasonably took advantage of the policy. There is evidence she did speak to Town Manager Krame in 1998. Lisa Ryan also alleges that she reported the harassing behavior on an almost daily basis to her supervisors, which is also an acceptable method of reporting under the policy manual's reporting requirements. (*See id*.)

Defendant claims that Lisa Ryan's statements, standing alone, are not enough to defeat an *Ellerth* defense.  (Memo in Support, p. 13 (citing *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th

Cir. 2004)).)    To   argue   this   is   to   misunderstand   the *Faragher/Ellerth* defense's nature as an affirmative defense.  *See Ellerth*, 524 U.S. at 765 (stating "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an *affirmative defense* to liability or damages, subject to proof by a preponderance of the evidence.") (emphasis added); *Faragher*, 524 U.S. at 807 (stating "[w]hen no tangible employment action is taken, a defending employer may raise an *affirmative defense* to liability or damages, subject to proof by a preponderance of the evidence.") (emphasis added)).

When a defendant raises an affirmative defense, the burden of proof rests squarely upon the defendant, not the plaintiff.  *See Ellerth*, 524 U.S. at 765 (stating "[w]hen no tangible employment action is taken, *a defending employer may raise an affirmative defense* to liability or damages, subject to proof by a preponderance of the evidence.") (emphasis added); *Faragher*, 524 U.S. at 807 (stating "[w]hen no tangible employment action is taken, *a defending employer may raise an affirmative defense* to liability or damages, *subject to proof by a preponderance of the evidence*") (emphasis added)).  In reality, Defendant's allegations,

-37-

standing alone, cannot establish the defense; it is not the other way around, as Defendant would have the Court believe.

Defendant's attempt to cast the burden upon Lisa Ryan to prove that she reported the hostile work environment is unavailing. Defendant, in claiming that Lisa Ryan's statement that she reported the hostile behavior to her supervisors is insufficient to avoid the *Faragher/Ellerth* defense, forgets to put on any proof whatsoever that she did not.  If Defendant cannot show, by a preponderance of the evidence, that Lisa Ryan did not report the behavior, then the burden cannot be placed upon Lisa Ryan to make a showing that she reported the actions.  To do so would be no different than forcing Defendant to prove that it did not discriminate against Lisa Ryan after her making blanket statements that it did with absolutely no proof of the allegations.  *Cf. Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004) (explaining that although the burden of production may shift in an indirect proof scheme, the burden of persuasion is always on the plaintiff (or here, Defendant, as this is an affirmative defense)).  The party which bears the burden must meet the burden; here, Defendant has not.

Additionally, Defendant's own claims show that Lisa Ryan must have lodged complaints to persons in authority.  Defendant states, "Lisa Ryan admits that she believes the 1996 rumor from Jeff Girten

-38-

was handled in an acceptable manner. Additionally, it was undisputed that Volkman investigated allegations that Chip Bell used profanity." (Memo in Support, p. 13.) Volkman also, according to Defendant, removed the pornography. Defendant does not claim that any of this was done in response to the EEOC charge. *Id*. The fact that these instances were addressed by Defendant shows that someone must have reported them, or in the alternative, had actual knowledge of these problems. In her deposition, Lisa Ryan claims that she reported the hostile behavior on an almost daily basis. Defendant makes no claim that anyone other than Lisa Ryan reported these instances. It is reasonable to infer that Lisa Ryan reported these instances, and if she did, then a reasonable inference can be made that she reported all such behavior just like she claims. Since Defendant has the burden of proof, and has done nothing to establish, by a preponderance of the evidence, that the above inference is false, it has not carried its burden.

Moreover, Defendant has not shown that it responded reasonably to cure the hostile environment, nor has Defendant acted to prevent its continuance. Defendant cites the above instances where it addressed the issue. Defendant then goes on to claim that it found no discrimination in any way against Lisa Ryan. Defendant investigated the allegations, through its attorneys, after receiving the EEOC charge. This is too little too late. Since

Defendant has failed to prove that Lisa Ryan had not reported, and since Lisa Ryan claims to have made proper complaints, only responding after the EEOC charge is insufficient action on Defendant's part, to address the allegations made by Lisa Ryan. Because the Court must view all facts in the light most favorable to Lisa Ryan along with all reasonable inferences there from unless there is clear evidence to the contrary, the Court cannot conclude that a response after the EEOC charge is a reasonable means of addressing Lisa Ryan's nearly daily complaints.

It must be noted there are issues of material fact as to the first prong of the defense as stated in *Faragher*: Was the Town negligent in hiring Bell, Lewandowski, and Poston as supervisors? Were they in fact "supervisors"?  Was the Town negligent in supervising these individuals?  Was the Town negligent in allowing the described activities to occur?  The answers to these unaddressed questions will determine whether the Town knew or should have known about Bell, Lewandowski, and Poston's behavior.

Even if Bell, Lewandowski, and Poston are not considered to have been Lisa Ryan's supervisors, and it is not likely that Poston could avoid that classification, the Town knew or should have known about the behavior and did not adequately address it.  The allegation that Poston participated in acts that created a hostile work environment, and observed others doing so, makes it impossible

-40-

to believe that the employer did not know about the harassing behavior.   Poston, as the assistant director of public works, having engaged in the behavior and observed others doing so, has sufficient standing as a supervisor, if not Lisa Ryan's, that his knowledge should be charged to the Town.   He supervised the activities of the lower level supervisors and reported only to Volkman and those above Volkman.   His knowledge and the arguable lack of an adequate remedy to the entire situation could lead a reasonable jury to conclude that the Town was negligent in addressing the harassment.

Finally, even though the Town does not fully address the defense as detailed in *Faragher*, the Court considered the Town's arguments on the subject.   However, the defense detailed in *Faragher* is an affirmative one.   This affirmative defense was not raised in Defendant's amended answer as required by Federal Rule of Civil Procedure 8(c).   As a result, the defense may very well be waived.   *See Maul v. Constan*, 928 F.2d 784 (7th Cir. 1991); *Braddock v. Madison Cty, Ind.*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998).   This issue has not been briefed by the parties, and the Court will not address it further.

Accordingly, Defendant's Motion for Summary Judgment is **DENIED** with regard to Lisa Ryan's claim of discrimination by means of a sexually hostile work environment.

<u>Defendant Is Partially Entitled to Summary Judgment</u>
<u>With Regard to Lisa Ryan's Claim of Sex Discrimination</u>

Defendant claims that Lisa Ryan did not allege sex discrimination through disparate treatment, aside from alleging a sexually hostile work environment, and therefore Lisa Ryan cannot be allowed to litigate the issue of sex discrimination. Lisa Ryan responds by stating that the Charge of Discrimination contains the following sentence as Count II, "I believe I have been discriminated against based on my sex, female, in violation of Title VII of the 1964 Civil Rights Act as amended." (*See* Def.'s Ex. P.) Because Count II was included in the Charge, Lisa Ryan asserts that she sufficiently stated a claim for sex discrimination in her charge and should be allowed to litigate the matter in federal court. Lisa Ryan is correct in this assertion.

Title VII claims cannot be brought in federal court unless the claims were included in the EEOC charge. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule is not jurisdictional, and therefore is properly raised in the present motion for summary judgment. *Id*. The requirement serves a dual purpose. *Id*. It allows the EEOC to engage in conciliatory work and provides the employer with notice of the charges. *Id*. However, as most charges are filed by individuals without assistance from attorneys who know and understand the process,

"[t]he test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway: all Title VII claims set forth in the complaint are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 588 F.2d 164, 167 (7th Cir. 1976)); *see also Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004) (stating "because EEOC complaints are most often compiled without assistance of counsel, we afford plaintiffs considerable leeway and ask only whether a claim set forth in the complaint is 'like or reasonably related to the allegation of the charge and growing out of such allegations.'") (quoting *Cheek*, 31 F.3d at 500).

This minimal requirement does not avoid the requirement that the Charge give reasonable notice to both the EEOC and the charged party of the nature of the charges. *See id.* (holding that the plaintiff's claim was not sufficiently related to or arising out of the claims she made in the Charge). The same is arguably true in the present case. Cause II is ambiguous at best. A hostile work environment based upon sex is addressed by the statement in Cause II, but sex discrimination through disparate treatment could also be read into the sentence. Thus, Cause II must be read in conjunction with Cause I in order to determine whether a sex

-43-

discrimination cause of action was stated in the Charge.   To determine whether such a cause was stated, the Court looks to whether "the facts and allegations set forth in" the Charge are sufficiently related to or like the claims growing out of the allegations.   *Id.*; *see also Cheek*, 31 F.3d at 500.

The allegations in Cause I include many of the facts that Lisa Ryan relies upon in her claim for disparate treatment.   For example, in addition to the hostile work environment elements in it, the Charge states that there is no women's restroom in her primary work area, that she has been forced to use the men's restroom, and she has not been allowed to drive the large trucks although she is fully qualified.   Disparate treatment claims rest upon such allegations, and thus Defendant had sufficient notice that such a claim could be brought if the EEOC gave Lisa Ryan her right to sue letter.   Since the Court determines that Lisa Ryan sufficiently stated her claim for sex discrimination in the EEOC Charge, the issue of whether Defendant is entitled to summary judgment regarding that claim will now be fully addressed.

There are two methods of proving a disparate treatment claim under Title VII.   First, a plaintiff can show intentional discrimination through the direct method by putting forth evidence of clear and intentional discriminatory conduct that affected the terms and conditions of her employment.   *See Rhodes v. Illinois*

-44-

*Dept. of Transp.*, 359 F.3d 497, 504 (7th Cir. 2004) (setting out the requirements for the direct method of proving a disparate treatment case).  Second, she may utilize the indirect method.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973) (setting out the requirements for proving discrimination through the indirect method).

To be successful in utilizing the direct method, a plaintiff must produce either direct or circumstantial evidence that an "employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as sex." *Rhodes*, 359 F.3d at 504 (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998)).  Direct evidence is evidence that, standing alone, proves intentional discrimination if believed by the trier of fact.  *Id*.  Basically, to be successful using direct evidence, under the direct method, a plaintiff must have an admission by the employer. *Id*. Alternatively, a plaintiff may utilize circumstantial evidence to prove sex discrimination under the direct method.  *Id*. To do so, the plaintiff must produce a "convincing mosaic" of circumstantial evidence, thus allowing the trier of fact to make an inference of intentional discrimination.  *Id*.  The circumstantial evidence must point directly to an impermissible motive.  *Id*.  It is clear that the direct method is a difficult path to proving impermissible discrimination under Title VII.  *See id*.

-45-

Lisa Ryan argues that there is direct evidence of discrimination. The Court disagrees. Lisa Ryan claims that the following facts are sufficient to show intentional discrimination. First, Chip Bell said that the "fucking bitch" was not going to operate his tractor, and on another occasion that, that "fucking bitch" was not going to get a new tractor seat. (Pls.' Response, p. 7.) Even if true, this says nothing about Lisa Ryan's sex. As was stated above, the word "bitch" is not inherently sexual, and standing alone does not show sex bias and is not necessarily a gendered term. *See Galloway*, 78 F.3d at 1168 (stating "[t]he terms 'fucking broads' and 'fucking cunts' are more gendered than 'bitch'; and there was much else in the case to establish the sexual character of the harassment. We do not suggest, moreover, that the word 'bitch' can *never* figure in a sex discrimination case. When a word is ambiguous, context is everything. The word 'bitch' is sometimes used as a label for women who possess such 'woman faults' as 'ill-temper, selfishness, malice, cruelty, and spite,' and latterly as a label for women considered by some men to be too aggressive or careerist."). Moreover, the denial of a new seat and of the use of Bell's tractor makes no indication that such denial was due to sex. Rather, the denial could have been for a proper reason or even due to pure dislike. Either way, there is no showing of impermissible motive in either instance.

-46-

Gene Poston allegedly "laughed her off" when Lisa Ryan asked to use the heavy equipment. (Pls.' Resp., p. 7.) Again, there is nothing in that allegation to indicate that an impermissible motive was involved in such a response to Lisa Ryan's request. Similarly, Robert Volkman's statement that Lisa Ryan should not max herself out by becoming an "operator" or "crew leader" does not directly point to an impermissible motive. (*Id.*) The statement, backed up by no factual evidence, that Richard Krame "wanted to protect his guys" not only lacks basis and is pure speculation, but also does not point to impermissible motive. (*Id.*) The term "guys" could be used for his entire crew, even though there was a woman on it. Moreover, why wouldn't an individual in charge look out for those under his or her direct control? Finally, the fact that the president of the town council wanted to fire the Ryans cannot be used to show impermissible sex discrimination, since one of the Ryans happens to be male. It may be some proof of a retaliatory intent depending upon when such a statement was made, but it says nothing about intentional sex discrimination or disparate treatment.

Likewise, the combination of all of these allegations, used as circumstantial evidence, does not rise to the level of a "convincing mosaic" of evidence that would allow an inference of impermissible discrimination. When looked at together, no

-47-

indication is given that there was an impermissible motive behind the actions of Defendant.  The allegations may go so far as to indicate that the supervisors in the Street Department and even some persons with more authority in the Town did not like Lisa Ryan, but there is nothing to show that this dislike stemmed from her sex.  Since the circumstantial evidence does not directly point to impermissible motive, under the direct method of proof, Lisa Ryan's claim must fail.

Under the indirect method, established in *McDonnell Douglas v. Green*, 411 U.S. 729 (1973), Lisa Ryan must begin by showing that she is a member of a protected class, that she was performing her job satisfactorily, that she was subjected to an adverse employment action, and that similarly situated individuals not in the protected class were treated differently.  *Rhodes*, 359 F.3d at 504. The burden then shifts to Defendant to produce a legitimate non-discriminatory reason for the adverse employment action.  *Id*.  If Defendant is successful in this, the burden of production returns to Lisa Ryan to show that Defendant's proffered reason was pretextual.  *Id*.  The burden of persuasion is always on Lisa Ryan. *See id*. at 508 (discussing the burdens of each party when the burden shifting, indirect approach, is used in a retaliation claim).

As a woman, Lisa Ryan is clearly a member of a protected class. During the time of the alleged harassment, she was performing her duties as expected. Although Defendant had given her verbal and written warnings, Lisa Ryan has proffered evidence showing that she performed her duties in accordance with reasonable expectations. The central issues are whether Lisa Ryan was subjected to any adverse employment actions, and whether similarly situated individuals were treated differently.

An adverse employment action is something "more than a mere inconvenience or an alteration of job responsibilities." *Id.* at 504 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (quotation marks omitted)). Rather, there must be a significant change in the plaintiff's employment status such as hiring, firing, denying promotion, re-assignment with substantially less responsibility, or a substantial change in benefits. *Id.* Temporary inconvenience to the plaintiff is not an adverse employment action, especially if the inconvenience is consistent with the plaintiff's job description. *Id.*

The adverse employment actions that Lisa Ryan allege essentially break down into four categories. First, abuse of supervisory discretion; second, failure to take corrective action; third, failure to provide a women's restroom near her workstation; and fourth, she did not receive equal pay for equal work. Lisa

-49-

Ryan claims that supervisory discretion was abused in that she was consistently assigned to more menial tasks than her male colleagues. Aside from the assignment to yard duty (addressed in the retaliation section), Lisa Ryan's claims of being assigned menial tasks prior to October of 2000 are time barred under *Morgan*. *Morgan*, 536 U.S. 101. She also alleges that she was denied opportunities for advancement, and was not allowed to operate the Town's heavy equipment. The use of the equipment and the experience thereby gained was the means by which an employee was able to obtain promotions. Therefore, because Lisa Ryan was not allowed to gain the experience when others were, she was passed over for available promotions. Lisa Ryan alleges that this shows a deliberate denial of career opportunities to her on the part of the Town. The male employees allegedly were allowed to use the equipment upon beginning their employment, whereas Lisa Ryan was not allowed to use the equipment even though she had more seniority than the males. Lisa Ryan alleges that the denial of training resulted in her being passed over for promotions. The failure to promote also resulted in Lisa Ryan being paid less than others who possessed equal skill and seniority because she was artificially held back from being promoted.

The Town's failure to correct the alleged hostile work environment and Lisa Ryan's mistreatment by co-workers and

supervisors alike was addressed adequately above.  Lisa Ryan also claims that the failure to provide a women's room near her normal on-site workstation was an adverse employment action.  She was not given a new tractor seat; she also was put on yard detail, and was not paid for holiday and vacation time that she allegedly earned.

At least some of Lisa Ryan's claims, if true, rise to the level of materially adverse.  This is true because all but the yard detail were more than mere temporary inconveniences, and all but being placed on yard detail affected the terms and conditions of her employment.  Moreover, as to the failure to promote, and the failure to allow Lisa Ryan to use equipment such that she could gain experience and eventually be promoted, similarly situated individuals were allegedly treated differently.  The same is true of the restroom situation, as males did have a restroom in the building in which they worked.  As to the other claims, similarly situated individuals were not treated differently.  Defendant must therefore produce a legitimate, non-discriminatory reason for its actions.

First, Lisa Ryan did not receive holiday and vacation pay because she had used all that she had earned. (Def.'s Ex. W). There is no indication by Lisa Ryan that this is pretextual. Moreover, all employees were subject to the same policy with regard to vacation pay, thus she was treated no differently than any

similarly situated individual.  To show this, James Ryan received the same memo when he requested the same pay.  (Def.'s Ex. X). Therefore, the denial could not have been based upon sex in the first place.

Second, with regard to the failure to promote, the Town claims that it did not have any positions available after the year 2000. Under *Morgan*, Lisa Ryan may only look back 300 days prior to filing her Charge with the EEOC with regard to any claims other than hostile work environment.  Therefore, she may not look to any actions which may be discriminatory and occurred prior to October of 2000.  If there were no positions available at a higher level than that which Lisa Ryan had previously attained, the Town could not promote her.  This is a legitimate non-discriminatory reason for not promoting Lisa Ryan.  There is nothing to indicate that the lack of available positions was pretextual for the Town's failure to promote Lisa Ryan.

Third, the lack of a women's restroom in the building where Lisa Ryan worked was a condition of her employment before the time period in which she is allowed to allege discrete acts of discrimination.  However, this condition existed during the time frame as well.  Defendant claims that it provided a women's restroom for its female employees in a building only 150 feet away from the building in which Lisa Ryan worked.  Lisa Ryan counters

that, that bathroom was not to be used for cleaning up after working in the field, which was necessary given her position. Further, she states that although she did in fact use the male restroom in her building, she was harassed with regard to this use through complaints made by Jeff Girten.  Jeff Girten even filed a police report against Lisa Ryan for using the men's room to wash up.  Lisa Ryan does not allege that she was disciplined for her use of this restroom, nor did she use it for its toilets.  Instead, she continued to use it for washing up.  The harassment is more properly addressed in her hostile work environment claim.  The fact that a restroom was provided for her in another building nearby, that her work was not usually done inside the building, and the fact that she was allowed to use the restroom to "wash up" shows that there was no discriminatory intent in that there was not an adverse employment action.  If this constituted an adverse employment action, then the Town's actions in allowing the use for washing up, providing a restroom for her to use only a short distance away thus determining that an additional restroom was not necessary in building are legitimate non-discriminatory reasons. Moreover, there is no showing of pretext because the Town did what was necessary to accommodate Lisa Ryan.

Finally, the failure to train and allow Lisa Ryan to use the heavy equipment is an adverse employment action.  The fact that new

-53-

male employees were allowed to use the equipment shows that similarly situated individuals were treated differently.  Lisa Ryan claims that Jeff Huet determined who would go to training classes for certain types of job activities including tractor training in 2003, trenching and shoring training in 2003, chainsaw training in 2003, and bucket truck training in 2002.[11]  Her name was never on the prepared list of employees to be trained.  As she was the only female who could be eligible for such training, and males went to the training, similarly situated men arguably were treated differently.

Defendant does not provide any non-discriminatory reason for its actions in not training Lisa Ryan.  Instead, it argues that she has not made out a prima facie case for failure to train.  In reality, the failure to train was not alleged as a separate claim, but only as a particular adverse employment action.  Insofar as it may be construed as a separate action, Lisa Ryan has made out the prima facie case enough to pose a genuine issue of material fact.  She is a member of a protected class, the employer provided training, she was eligible (or at least Defendant does not state or give any proof that she was not eligible), and similarly situated individuals outside of the protected class were trained.  These

---

[11] Lisa Ryan's affidavit also mentions bucket truck training in Summer 2000, but this claim would be time barred under *Morgan*, 536 U.S. 101, and therefore is not considered.

failures, which fell within the proper time frame, raise a genuine issue of material fact.

For the forgoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment to the extent that it relates to Lisa Ryan's claim that she suffered discrimination with regard to the failure to train.  Summary Judgment is **GRANTED** with regard to the failure to promote, failure to provide a women's restroom in building 1, and failure to pay Lisa Ryan for vacation days in December of 2003.


<u>Defendant is Entitled to Summary Judgment with Regard</u>
<u>to James Ryan's Claim Of Impermissible Retaliation Only</u>

In order to prove retaliation in violation of Title VII, Plaintiffs must show that they engaged in statutorily protected action, were subjected to an adverse employment action, and that there is a causal connection between the two.  *Rhodes*, 359 F.3d at 508.  Plaintiffs must first establish a prima facie case by showing that they engaged in a protected action, that they continued to perform their jobs satisfactorily, that they were subjected to an adverse employment action, and that similarly situated employees who did not complain were treated differently.  *Id*.  Then Defendant has the opportunity to produce a legitimate non-discriminatory reason for such action.  *Id*.  Plaintiffs then have the burden of proving that Defendant's proffered reason is pretextual.  *Id*.

-55-

James Ryan's claim of retaliation rests on claims that his midnight crew was reduced in number earlier than usual, his supervisory power as a crew leader was diminished, and that he and Lisa Ryan were placed on yard duty for a month.  James Ryan had engaged in a statutorily protected activity by supporting his wife's EEOC claim, and he performed his duties in a satisfactory manner.

The fact that the midnight crew was reduced in number was not an adverse employment action.  The terms and conditions of James Ryan's employment were not changed by this action as there was not enough work that needed to be done overnight to justify the additional employees on that shift.  Therefore, he was not harmed by such action.  Even if the Court were to consider this an adverse employment action, Defendant argues that it reduced the number of employees because the winter was unusually light, and the amount of work did not justify the number of people working overnights. Additionally, it was the Town's practice to reduce the crew at the point when it became clear that so many people were unnecessary. Thus, Defendant argues that Town policy rather than retaliation was the reason for this action.  There is nothing which sufficiently shows pretext with regard to Defendant's proffered reason beyond timing.  However, timing is accounted for by Defendant's proffered reason and thus pretext is not established.

-56-

James Ryan claims that his supervisory capacity as a crew leader was taken away from him because he had no crew to work under him. This may be an adverse employment action, as it is arguably a sever reduction in responsibility. Defendant argues that it was not an adverse employment action as crew leaders do not always have crews working under them. The work load determines whether or not a crew is assigned to work under the leader. This argument is convincing in that if having a crew is not part of the crew leader's necessary responsibilities, then it cannot have been taken away. The general purpose of a crew leader does not include supervision of other employees; rather, some supervision duties will be exercised. (Def.'s Ex. E). It is not the case that a crew leader will always be exercising a supervisory capacity and thus the Town's policy that crew leaders do not always supervise a crew is not inconsistent with the job description. Moreover, the fact that James Ryan did not have his crew is no more than a regular occurrence according to the Town's policy.

Even assuming that it constitutes an adverse employment action, Defendant again proffers a non-discriminatory reason. Town policy and the job description do not require that the crew leader does not always have his own crew or run large projects. The work did not warrant James Ryan running an entire crew on the midnight

shift, and the Town's proffered reason is legitimate and non-discriminatory.  There is no evidence of pretext as to this matter. With regard to being placed on yard detail, this was a mere temporary inconvenience that cannot be considered to be an adverse employment action.  *See Rhodes*, 359 F.3d at 505.  The placement only lasted for one month, his skills were utilized in this project, and others helped.  Defendant is entitled to summary judgment with regard to James Ryan's claim of impermissible retaliation.

In addition to the same claims made by James Ryan (with regard to which summary judgment has been granted), Lisa Ryan claims that she was retaliated against in that she was continually subjected to a hostile work environment.  It seems to be true that a hostile work environment could constitute an adverse employment action for the purposes of a retaliation claim.  *See Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) (holding that for the purposes of a First Amendment claim under 42 U.S.C. § 1983, a campaign of petty harassment was an adverse employment action in retaliation for political views against the Mayor espoused by an employee of the Mayor's office).  Lisa Ryan was subjected to the same comments as were discussed *supra*.  She was also accused of stealing from the Town, a charge which was never substantiated, and placed on yard detail.  The issue of being placed on yard detail was sufficiently

-58-

addressed above.   Lisa Ryan was also followed, and watched by persons other than her direct supervisor which she alleges added to the hostile environment.

The facts creating a genuine issue of material fact as to the existence of a hostile work environment have been sufficiently dealt with above, save the following.   The use of pornography had been addressed.   Volkman stated in his deposition that he had told the employees that they were not to keep pornography in the shop. However, he also noted that he was sure that some had been removed while other pornographic materials were hidden, and that no one was disciplined for having pornography.   Moreover, the historical hostile work environment must be taken into account as it is necessary to understand the context in which the alleged verbal abuse, as well as Huet and Girten's continual surveillance of Lisa Ryan took place.   Given that there is a genuine issue of material fact as to the existence of a hostile work environment prior to the filing of the claim, and that most of the behavior leading thereto continued after the filing, a genuine issue of material fact exists as to whether Lisa Ryan was retaliated against, unless the Town proffered a legitimate non-discriminatory reason for the existence of this hostile work environment.

Defendant has not proffered such a reason, and instead relies on its claim that there was no hostile work environment.   That

-59-

being true, the Court **DENIES** Defendant's Motion for Summary Judgment with regard to Lisa Ryan's claim for retaliation.

Lisa Ryan's Claim of Intentional Infliction of
Emotional Distress Is Preempted by Her Title VII
Cause of Action

In *Jansen v. Packaging Corp. of America*, 123 F.3d 490 (7th Cir. 1997), the court ruled that Title VII preempts common law claims of Intentional Infliction of Emotional Distress ("IIED") if such a claim is based upon the same operative factual allegations. *Id*. at 493. Lisa Ryan's complaint uses facts to support her claim of her IIED claim that are identical to those she used to support her Title VII claim. Furthermore, her IIED claim is not addressed in her response, so it appears Lisa Ryan has abandoned this claim. The Court has reviewed the Town's arguments on this claim, and has determined it is entitled to summary judgment for this reason.

As *Jansen* applied Illinois law, and the Court has been unable to locate a similar case applying Indiana law, the Town is alternatively entitled to summary judgment on Lisa Ryan's IIED claim as it is undisputed that Lisa Ryan failed to file a tort claim notice pursuant to I.C. Section 34-13-3-10. *See J.A.W. v. State*, 650 N.E.2d 1142, 1153 (Ind. Ct. App. 1995). Furthermore, upon review of Lisa Ryan's claim, Lisa Ryan has failed to establish the Town's conduct was "extreme and outrageous" and "[went] beyond

all possible bounds of decency . . . ."  *See Conwell v. Beatty*, 677 N.E.2d 768, 777 (Ind. Ct. App. 1996).  Of course, Lisa Ryan also cited to no evidence nor did she present any argument on this claim.  Accordingly, summary judgment is **GRANTED** for Defendant with regard to Lisa Ryan's IIED claim.


CONCLUSION

       For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**; the motion to strike is **DENIED**.  The motion is **GRANTED** as to Lisa Ryan's claim of Intentional Infliction of Emotional Distress, James Ryan's claim of retaliation, and Lisa Ryan's claims of sex discrimination through disparate treatment, with the exception of the portion of the claim regarding Defendant's failure to train her.  The Clerk is **ORDERED** to **DISMISS** these claims with prejudice.  The motion is **DENIED** in all other respects.  This case **REMAINS PENDING** as to Lisa Ryan's hostile work environment claim, claim of retaliation, and claim of sex discrimination (failure to train only).  The Clerk is **ORDERED** to **CLOSE** this case with respect to Plaintiff James Ryan only.

**DATED:  May 4, 2005**               **S/RUDY LOZANO, Judge**
                                       **United States District Court**

-61-